UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| 14019 EMMA WAY COVE DRIVE | : | CIVIL ACTION NO. 23-CV |
| GONZALES, LOUISIANA 70737 | : | |

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

NOW INTO COURT COMES Plaintiff, United States of America, by and through undersigned counsel, who alleges the following:

**NATURE OF THE ACTION**

1. This is a civil forfeiture action in rem brought to forfeit and condemn to the United States 14019 Emma Way Cove Drive, Gonzales, Louisiana 70737 (the "defendant property"), representing any property, real or personal, which constitutes or is derived from proceeds traceable to violations of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), laundering of monetary instruments (18 U.S.C. § 1956(a)(1)(B)), and money laundering (18 U.S.C. § 1957) and, thus, is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and (a)(1)(A).

**THE DEFENDANT IN REM**

2. The municipal address of the real property is 14019 Emma Way Cove Drive, Gonzales, Louisiana 70737 (the "defendant property").

The legal description is as follows:

That certain lot or parcel of ground, together with all the buildings, component parts and improvements thereon, and with all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in that subdivision of the Parish of Ascension, State of Louisiana, known as GATEWAY COVE SUBDIVISION and being more particularly described on the official map of said subdivision on file of record in the office of the Clerk and Recorder for the Parish of Ascension, Louisiana, as LOT NUMBER SEVENTY-

FOUR (74), said subdivision, said lot having such measurements and dimensions as Indicated on said map and being subject to such servitudes and restrictions as are of record in the office of the Clerk and Recorder for the Parish of Ascension, Louisiana.

## JURISDICTION AND VENUE

3. The United States brings this action in rem in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over this action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has in rem jurisdiction over the defendant property under 28 U.S.C. § 1355(b). Upon the filing of this complaint, the plaintiff will proceed under 18 U.S.C. § 985, pursuant to Supplemental Rule G(3)(a) of the Federal Rules of Civil Procedure, because the defendant property is real property.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district and pursuant to 28 U.S.C. §§ 1355(b)(1)(B), 1395(b) because the property subject to forfeiture is found in this district.

## FACTS

**The Employee Retention Tax Credit**

6. The refundable Employee Retention Tax Credit ("ERC") is a refundable federal tax credit authorized under the Cares Act. The ERC was designed to encourage businesses to keep employees on their payroll. The ERC was extended and modified under The Taxpayer Certainty and Disaster Tax Relief Act of 2020 ("TCDTRA") and the American Rescue Plan Act ("ARP") for businesses that continued to pay employees while shut down or for businesses that had significant declines in gross revenue due to the COVID-19 global pandemic.

7. For purposes of the ERC, an eligible employer is a business with operations that have been partially or fully suspended due to governmental orders due to COVID-19, or a business that has a 50% decline in gross receipts as compared to the same quarter in 2019

8. For 2020, the ERC is a refundable tax credit against certain employment taxes equal to 50% of the qualified wages an eligible employer pays to employees after March 12, 2020, and through December 2020. For 2021, the ERC is a refundable tax credit against certain employment taxes equal to 70% of the qualified wages an eligible employer pays to employees from January 1, 2021, through September 30, 2021.

9. For each employee, wages (including costs for certain health plans) up to $10,000 can be counted to determine the amount of the ERC per calendar quarter. The ERC is capped at $5,000 per employee retained between March 13, 2020, and December 31, 2020, and up to $7,000 per employee per quarter retained between January 1, 2021, and September 30, 2021.

10. Qualified employers can get access to the ERC by reducing upcoming payroll tax deposits or requesting an advance credit (i.e., a direct refund payment to the employer) on an Advance of Payment of Employer Credits due to COVID-19 (Form 7200) or an Employer's Quarterly Federal Tax Return (Form 941).

11. The Form 941 may be used to claim the COVID-related tax credits. The Employer's Annual Federal Tax Return (Form 944), used only by small employers notified in writing by the IRS to file annually instead of quarterly, may also be used to claim the COVID-related tax credits. The COVID-related tax credit may be greater than the tax owed by the employer, resulting in a refund to the employer.

**The Employee Retention Tax Credit Scheme To Defraud**

12.     From at least April 2020 through at least March 2023, within the Middle District of Louisiana and elsewhere, Damian Raby and others prepared and presented to the IRS certain tax forms, including Forms 941 and forms for the Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund (Form 941-X), claiming the ERC on behalf of several business entities. These entities either did not exist during the period of eligibility or did not have any legitimate business activities at the time of eligibility for the ERC. The Forms 941 and Forms 941-X submitted to the IRS contained material fraudulent representations. These fraudulent claims for COVID-related tax credits often resulted in refunds being mailed to the fraudulent businesses.

13.     To make these fraudulent and fictitious businesses appear legitimate, Damian Raby and/or others filed documents with the IRS and the Louisiana Secretary of State ("LA SOS"), resulting in the formation of the businesses.

*CW Furniture*

14.     On or about August 22, 2022, the IRS received a Form 941 for CW Furniture for the second quarter of 2021, covering the period from April 1, 2021, through June 30, 2021. This Form 941 claimed 25 employees, total wages of $321,844, and a total tax due of $49,242. After filing this Form 941, CW Furniture filed a Form 941-X, which claimed a nonrefundable ERC of $19,954 and a refundable ERC of $205,337. The balance due, less the claimed ERC credits and the addition of interest, was $179,689 on CW Furniture's account for the second quarter of 2021.

15.     CW Furniture's EIN was established with the IRS on August 10, 2022. There was no record of CW Furniture paying any employees or contract workers from March 13, 2020, through December 31, 2021, the period of eligibility to qualify for the ERC. According to the Louisiana Secretary of State, CW Furniture was registered on January 17, 2023, the listed address

was 2722 Rebecca Lynn Avenue, Baton Rouge, Louisiana 70807, and Corey Williams was listed as both the registered agent and the manager.

16. The combination of the issuance of the EIN by the IRS in August 2022 and the registration of CW Furniture with the Louisiana Secretary of State in January 2023 indicates that CW Furniture was not conducting business during the period of eligibility, specifically March 13, 2020, through December 31, 2021, to qualify for the ERC. Furthermore, the lack of records of CW Furniture paying any employees or non-employee contractors or workers during the eligibility period indicates that it is not eligible for the refundable ERC.

17. Additionally, the CW Furniture bank accounts revealed that there are no regular or frequent payments to individuals, as would be expected from a company with multiple employees that receive wages, specifically the 25 employees as represented on the CW Furniture Form 941. There is no evidence of any other bank accounts for CW Furniture at any other financial institutions.

18. Based on the fraudulent representations provided in the Form 941 and the Form 941-X for CW Furniture for the second quarter of 2021, on January 10, 2023, the IRS issued a check in the amount of $179,688.66 made payable to CW Furniture. This IRS check was mailed from Kansas City, Missouri, to Baton Rouge, Louisiana.

19. On April 17, 2023, this $179,688.66 check was deposited into Navy Federal Credit Union Account Number XXXXXX5988 ("NFCU ACCOUNT #5988") in the name of "Corey Williams Highland Apts." Through a series of transfers, all but approximately $800.00 was subsequently transferred into Navy Federal Credit Union Account Number XXXXXX1242 ("NFCU ACCOUNT #1242") in the name of "Corey Williams Highland Apts." Both NFCU ACCOUNT #5988 and NFCU ACCOUNT #1242 were opened in March 2023. At no point did

either of these accounts receive any deposits other than funds from the fraudulently-obtained ERC refund check.

20. Between May 10, 2023, and May 17, 2023, through a series of seven transfers, a total of approximately $96,603.00 was transferred from NFCU CHECKING ACCOUNT #1242 to US BANK HOME MORTGAGE LOAN NUMBER XXXXXX3832 ("USB Mortgage #3832"). USB Mortgage #3832 is in the name of Damian Raby for his residence at 14019 Emma Way Cove Dive, Gonzales, Louisiana 70737.

*Bunch Construction*

21. On or about August 22, 2022, the IRS received two Forms 941 for Bunch Construction, one for the third quarter of 2020 and one for the first quarter of 2021. The IRS also subsequently received two Forms 941-X for Bunch Construction.

22. On August 22, 2022, the IRS received a Form 941 for Bunch Construction for the third quarter of 2020, covering the period from July 1, 2020, through September 30, 2020. This Form 941 claimed 25 employees, total wages of $202,417, and a total tax due of $30,970. After filing this return, Bunch Construction filed a Form 941-X in which Bunch Construction claimed nonrefundable ERC of $12,550 and a refundable ERC $88,254. The balance due, less the claimed ERC credits and adding in interest, was $70,706.

23. Also on August 22, 2022, the IRS received a Form 941 for Bunch Construction for the first quarter of 2021, covering the period from January 1, 2021, through March 31, 2021. This Form 941 claimed 30 employees, total wages of $341,890, and a total tax due of $83,421. After filing this return, Bunch Construction filed a Form 941-X in which it claimed a nonrefundable ERC of $21,197 and a refundable of ERC of $218,126. The balance due, less the claimed ERC

from this period, less the claimed ERC credits claimed in a prior period and applied to this period and adding in interest, was $254,202 on Bunch Construction's account for the first quarter of 2021.

24. Bunch Construction's EIN was established with the IRS on August 15, 2022. According to the Louisiana Secretary of State, Bunch Construction, was registered on November 28, 2022, the listed address was 11906 Queens Drive, Baton Rouge, LA 70807, and Joshua Bunch was listed as both the registered agent and the manager.

25. The combination of the issuance of the EIN by the IRS in August 2022 and the registration with the Louisiana Secretary of State in November 2022 indicate that Bunch Construction was not conducting business during the period of eligibility, specifically March 13, 2020, through December 31, 2021, to qualify for the ERC. Furthermore, the lack of records of Bunch Construction paying employees or any contract workers during the eligibility period indicates that it is not eligible for the refundable ERC.

26. A review of the bank records for Bunch Construction indicate that the business never received any revenues and never received legitimate funds. The records also did not reveal any regular or frequent payments to individuals, as would be expected from a company with multiple employees that receive wages such as the 25 or more employees represented in the Bunch Construction Forms 941. There is no evidence of any other bank accounts for Bunch Construction at any other financial institutions.

27. Based on the fraudulent representations provided in the Form 941 and in the Form 941-X for Bunch Construction for the third quarter of 2020, on November 22, 2022, the IRS issued a check in the amount of $70,705.88 made payable to Bunch Construction. This IRS check was mailed from Kansas City, Missouri, to Baton Rouge, Louisiana.

28. Based on the fraudulent representations made in the Form 941 and in the Form 941-X for Bunch Construction for the first quarter of 2021, on November 22, 2022, the IRS issued a check in the amount of $254,202.22 made payable to Bunch Construction. The IRS check was mailed from Kansas City, Missouri, to Baton Rouge, Louisiana.

29. On December 12, 2022, the IRS check for $70,705.88 was deposited into Navy Federal Credit Union Account Number XXXXX8007 in the name of Joshua Bunch ("Navy FCU #8007"). On May 16, 2023, the IRS check for $254,202.22 was deposited into Navy Federal Credit Union Account Number XXXXX7890 in the name of Joshua Bunch ("Navy FCU #7890"). Navy FCU #8007 and Navy FCU #7890 were both opened on December 5, 2022, as well as Navy Federal Credit Union Account Number XXXXX7908 in the name of Joshua Bunch ("Navy FCU #7908"). After the deposit of the $254,202.22 into Navy FCU #7890, approximately $129,000 was transferred from Navy FCU #7890 to Navy FCU #7908. At no point did any of these Navy FCU accounts receive any deposits other than funds from the fraudulently-obtained ERC refund checks or checks from affiliated entities which also received fraudulent ERC refund checks. On May 19, 2023, $50,000 was transferred from Navy FCU #7908 to USB Mortgage #3832.

*Pope Flooring*

30. On or about December 9, 2022, the IRS received a Form 941 for Pope Flooring for the third quarter of 2021, covering the period from July 1, 2021, through September 30, 2021. This Form 941 claimed 30 employees, total wages of $345,689, and a total refund due of $179,067. Additionally, there was interest due on this refund.

31. Pope Flooring's Employer Identification Number ("EIN"), or Tax ID Number, was established with the IRS on November 28, 2022. There was no record of Pope Flooring paying any employees or contract workers from March 13, 2020, through December 31, 2021, the period

8

of eligibility to qualify for the ERC. According to the Louisiana Secretary of State, Pope Flooring was registered on March 21, 2023, the listed address was 3320 Edenborn Avenue, Suite 307E, Metairie, Louisiana, and Willie Pope was listed as both the registered agent and the manager. The EIN for Pope Flooring and/or the Louisiana Secretary of State registration documents were accessed and created via interstate wirings.

32. The combination of the issuance of the EIN by the IRS in November 2022 and the registration of Pope Flooring with the Louisiana Secretary of State in March 2023, indicates that Pope Flooring was not conducting business during the period of eligibility, specifically March 13, 2020, through December 31, 2021, to qualify for the ERC. Furthermore, the lack of records of Pope Flooring paying any employees or non-employee contractors or workers during the eligibility period indicates that it was not eligible for the refundable ERC.

33. Additionally, the Pope Flooring bank accounts revealed that there are no regular or frequent payments to individuals, as would be expected from a company with multiple employees that receive wages, specifically the 30 employees as represented on the Pope Flooring Form 941.

34. Based on the fraudulent representations provided in the Form 941 for Pope Flooring for the third quarter of 2021, on February 14, 2023, the IRS issued a check in the amount of $180,926.07 made payable to Pope Flooring. This IRS check was mailed from Kansas City, Missouri, to Metairie, Louisiana.

35. On April 17, 2023, this $180,926.07 check was deposited into Wells Fargo Business Checking Account Number XXXXXX8092 ("WF ACCOUNT #8092") in the name of Pope Flooring LLC. The address for WF ACCOUNT #8092 was at 2100 College Drive, Apartment 185, Baton Rouge, Louisiana 70808, in the Middle District of Louisiana. Kenyall

9

Williams was listed as the only authorized signer. There is no evidence of any other bank accounts for Pope Flooring at any other financial institutions.

36. On May 25, 2023, $50,000 was transferred from WF ACCOUNT #8092 to USB Mortgage #3832.

**Tracing Fraud Proceeds to the Defendant Property**

37. Records indicate that Damian Raby purchased the defendant property on or about September 25, 2020, for $265,000.00, and that the thirty-year mortgage for the defendant property was for approximately $260,200.00.

38. In May 2023, three large payments were made on the mortgage loan for the defendant real property. First, between May 10, 2023, and May 17, 2023, through a series of seven transfers, a total of approximately $96,603, funds originating from the $179,688.66 check generated from the Forms 941 and 941-X for CW Furniture, was transferred from NFCU #1242 to USB Mortgage #3832. Second, on May 19, 2023, $50,000, funds originating from the $180,926.07 check generated from the Form 941 for Pope Flooring, was transferred from Navy FCU #7908 to USB Mortgage #3832. Third, on May 25, 2023, $50,000, funds originating from $254,202.22 generated from one of the Forms 941 and Forms 941-X for Bunch Construction, was transferred from WF ACCOUNT #8092 to USB Mortgage #3832.

39. The defendant property is derived from proceeds traceable to violations of fraud based on numerous fraud indicators, including that 1) the businesses that received the fraud proceeds were not registered with the Louisiana SOS until well after the period for which the businesses were seeking an ERC refund; 2) the businesses that received the fraud proceeds did not receive their EINs from the IRS until after the period for which the businesses were seeking an ERC refund and, thus, were not eligible for an ERC refund; 3) the bank accounts that received the fraud proceeds were opened after the

period for which the businesses were seeking an ERC refund; and 4) there was no indication in the bank accounts that received the fraud proceeds of any regular or frequent payments to individuals, as would be expected from a company with multiple employees that receive wages.

## **BASIS FOR FORFEITURE**

40. The defendant property is subject to forfeiture because it represents any property, real or personal, constituting or derived from proceeds traceable to violations of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), laundering of monetary instruments (18 U.S.C. § 1956(a)(1)(B)), and/or money laundering (18 U.S.C. § 1957) and/or represents any property, real or personal involved in a transaction in violation of 18 U.S.C. § 1956(a)(1)(B) or 18 U.S.C. § 1957) and, thus, is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and (a)(1)(A).

WHEREFORE, the plaintiff requests that notice of this action be given to all persons known or thought to have an interest in or right against the defendant property; that the defendant property be forfeited and condemned to the United States of America; that the plaintiff be awarded its costs and disbursements in this action; and that the Court award the plaintiff such other and further relief as this Court deems proper and just.

UNITED STATES OF AMERICA, by

RONALD C. GATHE, JR.
UNITED STATES ATTORNEY

/s/ J. Brady Casey
J. Brady Casey, LBN 24338
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, Louisiana 70801
Telephone: (225) 389-0443
E-mail: john.casey@usdoj.gov